NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1023

COMMONWEALTH

vs.

JOSE RIVERA, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of murder in the second degree for aiding and abetting in the killing of Martin Butt (the victim). In this consolidated appeal, we consider the defendant's direct appeal from the conviction and his subsequent appeals from the orders denying his motions for new trial. The defendant contends, among other things, that the judge erred by failing to give jury instructions on the lesser included offenses of assault and battery and voluntary manslaughter. Because we conclude that it was error not to instruct the jury on assault and battery, we reverse the orders

denying the defendant's new trial motions, vacate the judgment, and set aside the verdict.[1]

Background. In deciding whether the evidence supported jury instructions for assault and battery and voluntary manslaughter, "all reasonable inferences must be resolved in favor of the defendant." Commonwealth v. Vanderpool, 367 Mass. 743, 746 (1975). Accordingly, we summarize the evidence presented at trial in the light most favorable to the defendant.

On the morning of September 9, 2012, Stephanie Coleman and Christopher Ansara, who were friends with the victim, woke up "dope sick" and without money to purchase heroin. The victim, a heroin addict, sent a text message to Ansara that morning asking if Ansara knew of any drug dealers the victim could rob. Coleman and Ansara knew the defendant because they bought drugs from him. They also knew that the victim had robbed the defendant's drug runner, Jose Rodriguez,[2] one week earlier.

In need of money and drugs and aware that the defendant might be interested in getting back at the victim, Coleman and Ansara proposed to the defendant a plan to set up the victim so

---

[1] In light of our disposition, we need not address the defendant's other arguments, regarding jury selection and newly discovered evidence, as they are not issues that will recur at any retrial.

[2] The witnesses knew Rodriguez as "Gary Scotty."

the defendant could beat him up.  In exchange, the defendant promised to take care of Coleman and Ansara if they brought the victim to Lawrence.

Acting according to the plan, Coleman and Ansara told the victim that they would all drive to Lawrence to meet with a drug dealer in the dealer's car, purportedly to buy drugs, and the victim would run up and rob the dealer.  Coleman and Ansara would split the proceeds with the victim.

After Coleman, Ansara, and the victim got out of the victim's car in Lawrence, a red truck stopped next to the victim.  The defendant and a couple of other men got out of the truck and chased the victim.  The victim ran and reached for his waistband, where Coleman had seen him put a gun.  Coleman testified that the victim tripped, at which point she turned her head.  Coleman ran toward the car and heard two gunshots "right away."  Isabel Reyes, Rodriguez's girlfriend, testified that Albert Vasquez, the person charged as the shooter, told her that the victim reached for the gun, the defendant punched the victim in the face, and Vasquez then fired two gunshots.

The Lawrence police responded to a call for shots fired. The police saw the victim on the ground bleeding from what appeared to be a gunshot wound to his head and discovered a gun

3

on the street feet away from the victim's hand.[3]  Police interviewed several witnesses, including Ansara and Coleman. Approximately three months later, the defendant was charged with murder in the first degree.

Discussion.  The defense theory at trial was that the defendant intended only to beat up the victim and had no intention of killing him.  The defendant contends that the evidence warranted a jury instruction on the lesser included offenses of assault and battery and voluntary manslaughter and that the judge erred by not giving the instructions.  Because the defendant objected to the judge's failure to instruct the jury on both lesser included offenses, we review for prejudicial error.  Commonwealth v. Teixeira, 486 Mass. 617, 622 (2021); Commonwealth v. Sanchez, 100 Mass. App. Ct. 644, 652 (2022).

A trial judge must give "an instruction on a particular offense where:  (1) the offense is, as a matter of law, a lesser included offense of the crime charged; and (2) 'the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense.'"  Commonwealth v. Donovan, 422 Mass. 349, 352 (1996),

---

[3] The gun located near the victim's body was a "blank pistol," meaning that it could shoot only blank cartridges. However, a firearms examiner testified that he would not be able to distinguish it from a real gun.

4

quoting Commonwealth v. Santo, 375 Mass. 299, 305 (1978). A judge must instruct on a lesser included offense only when there is "some evidence that specifically puts in question an element of the greater offense that is not required of the lesser offense." Commonwealth v. Porro, 458 Mass. 526, 536 (2010). The evidence offered to justify the instruction must provide more than "the mere possibility that the jury might not credit a portion of the Commonwealth's evidence." Id., quoting Commonwealth v. Donlan, 436 Mass. 329, 337 (2002). "When the evidence permits a finding of a lesser included offense, a judge must, upon request, instruct the jury on the possibility of conviction of the lesser crime." Commonwealth v. Woodward, 427 Mass. 659, 662-663 (1998), quoting Commonwealth v. Gould, 413 Mass. 707, 715 (1992).

1. Absence of assault and battery instruction. "It is undisputed that assault and battery is a lesser included offense of murder." Sanchez, 100 Mass. App. Ct. at 652, citing Commonwealth v. Miller, 457 Mass. 69, 81 (2010). To prove an intentional assault and battery, the Commonwealth must prove the "intentional and unjustified use of force upon the person of another, however slight." Porro, 458 Mass. at 529, quoting Commonwealth v. McCan, 277 Mass. 199, 203 (1931). Second-degree murder consists of two elements: "(1) an unlawful killing and (2) malice." Commonwealth v. Earle, 458 Mass. 341, 346 (2010).

5

See Model Jury Instructions on Homicide, Part V (2018).  Malice can be established by showing that:  (1) "the defendant intended to cause the victim's death," (2) "the defendant intended to cause grievous bodily harm to the victim," or (3) "the defendant committed an intentional act which, in the circumstances known to the defendant, a reasonable person would have understood created a plain and strong likelihood of death."  Earle, supra.  We evaluate the evidence cited by the defendant that "puts in question," Porro, 458 Mass. at 536, the malice element of second-degree murder, which is not required of intentional assault and battery.  See id.

Here, the defense strenuously disputed the Commonwealth's proof of malice, arguing at trial that the defendant lacked the necessary mental state for murder because he intended only to beat up the victim and that Vasquez shot and killed the victim in self-defense.  The Commonwealth's theory of the case placed the gun used to kill the victim in the hands of Vasquez, not the defendant.  Resolving all factual disputes in favor of the defendant, the evidence at trial provides a rational basis for acquitting the defendant of second-degree murder and convicting him of assault and battery.  See Donovan, 422 Mass. at 351-352 (jury should have been instructed that assault and battery was a lesser included offense of murder where defendant, who punched the victim in the face, claimed that he did not know his

6

coventurer was armed and did not see coventurer stab victim in the heart).

The evidence presented would have permitted the jury to conclude that the defendant had no plan to kill or cause grievous bodily harm to the victim. Coleman's testimony supported the defense theory that the defendant intended only to beat up the victim and not to kill him. She testified at trial that she and Ansara set up the victim to be "confronted" and beaten up by the defendant. Coleman denied that the defendant ever said that he wanted to kill the victim and maintained that he only wanted to "beat [the victim's] face." She told the police the same thing the day after the incident. When asked at trial if the defendant had intended to kill the victim, Coleman testified, "No, God no." The Commonwealth points to Coleman's testimony that when she warned the defendant of the victim's gun, the defendant responded, "We got guns too." Indulging all inferences in favor of the defendant, however, the jury could have discredited Coleman's testimony as fabricated and uncorroborated because she failed to tell this to the police until her third interview with them. Even if the jury believed that the defendant made the statement to Coleman, the evidence could still have permitted them to believe that the defendant and his associates were bringing guns solely to defend themselves since the victim had a gun.

7

Evidence about the moments leading up to the shooting also supported the defense theory that the defendant intended only to beat up the victim and lacked the intent to kill him. The jury heard testimony that the defendant punched the victim after chasing him and that Vasquez said that he shot the victim only after he saw the victim attempt to draw a gun. A gun was found at the scene just feet from the victim's hand after the shooting.

The trial judge appeared to view the evidence this way as well. Addressing defense counsel's request for the lesser included assault and battery instruction, the trial judge acknowledged that the evidence could support giving the instruction, stating that it "may be appropriate in the sense that the jury does not believe there is any intent to kill." After the Commonwealth objected, the judge responded that the lack of intent to kill was the defendant's "entire theory," and that theory was supported by Coleman's testimony that a beating was intended. Despite the judge's acknowledgment, when the trial reconvened[4] neither the defense counsel nor the judge raised the lesser included assault and battery instruction when

---

[4] Discussion about jury instructions began on a Friday and resumed the following Monday.

discussing the jury instructions.  Without further discussion or explanation, the judge did not give the instruction.

We agree with the trial judge's initial assessment that, resolving reasonable inferences in favor of the defendant, the evidence permitted a finding that the defendant intended to commit an assault and battery.  Where the judge made this assessment and defense counsel requested the relevant instruction, the judge was required to "instruct the jury on the possibility of conviction of the lesser crime."  Woodward, 427 Mass. at 663, quoting Gould, 413 Mass. at 715.  The judge's failure to give the lesser included assault and battery instruction therefore constituted error.  See Teixeira, 486 Mass. at 622.  See also Commonwealth v. Gilliard, 46 Mass. App. Ct. 348, 350-351 (1999) (affirming allowance of a new trial based on ineffective assistance of counsel where defense counsel failed to request assault and battery lesser included instruction and evidence supported finding that defendant participated in joint venture to beat victim).  Compare Sanchez, 100 Mass. App. Ct at 652-653 (failure to give assault and battery instruction not error where defendant's hitting the victim with metal baton "merged" with another assailant's simultaneous stabbing of victim, making defendant's role in victim's death clear from evidence).

The Commonwealth argues that the judge did not err in failing to instruct on the lesser included assault and battery offense because the jury would have acquitted the defendant outright if they found that the defendant believed the joint plan involved only beating up the victim.

We are unpersuaded that this case is similar to Commonwealth v. Alebord, 68 Mass. App. Ct. 1, 6-10 (2006). In Alebord, the defendant was an active and knowing participant in a plan to shoot into a crowd -- he gave the shooter the gun, drove him to the scene, and shared the shooter's intent to shoot at the intended targets. See id. at 9. In requesting an involuntary manslaughter instruction, the defendant argued that "it may be willful, wanton or reckless conduct" on the part of the shooter "to fire . . . toward a crowd of people or toward one or two people." Id. at 7. We concluded in Alebord that the trial judge properly rejected the argument because the "likelihood of death ensuing when a loaded weapon is aimed at a person or group of people and then intentionally discharged is plain and strong indeed" and that a "plan to fire a rifle into a crowd to scare and to secure the return of money does not entitle a defendant to an involuntary manslaughter instruction" even when the defendant later states that he did not want the shooter to hit anyone and expressed surprise that he did. Id. at 7, 9. Here, by contrast, the jury heard no evidence that the

10

defendant participated in any plan to shoot the victim or that he shared any intent with Vasquez to shoot the victim. The evidence here permitted the jury to draw a reasonable inference that the defendant intended only to beat up the victim and not to kill him.

We further conclude that the failure to instruct on assault and battery was prejudicial. Sanchez, 100 Mass. App. Ct. at 652. See Commonwealth v. Yunggebauer, 23 Mass. App. Ct. 46, 48-52 (1986) (vacating conviction of armed robbery and assault and battery by means of dangerous weapon because trial judge failed to instruct jury on lesser included offense of assault and battery). An error is prejudicial if we cannot conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), quoting Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983). As noted, the evidence permitted the jury to conclude that the defendant did not intend to kill the victim, do him grievous bodily harm, or engage in conduct that created a plain and strong likelihood of the victim's death. Moreover, there was no evidence that the defendant ever expressed such an intent -- the evidence of the defendant's malice in this case was entirely circumstantial.

11

Instructing juries on lesser included offenses "serves the public purpose of allowing the jury to convict of the offense established by the evidence, rather than forcing them to choose between convicting the defendant of an offense not fully established by the evidence or acquitting, even though the defendant is guilty of some offense." Woodward, 427 Mass. at 664-665, citing Commonwealth v. Walker, 426 Mass. 301, 305 (1997). Having carefully reviewed the trial transcript, we cannot rule out the possibility that the jury's verdict in this case was a result of such a forced choice as the evidence of murder was not overwhelming. Because we are not confident that depriving the jury of the option to find the defendant guilty of assault and battery rather than murder "had but very slight effect" on the outcome, Flebotte, 417 Mass. at 353, quoting Peruzzi, 15 Mass. App. Ct. at 445, we conclude that the error was prejudicial.

2. Absence of manslaughter instruction. The defendant also contends that the judge erred by declining his request for a lesser included offense instruction for voluntary manslaughter on the theory that Vasquez used excessive force in self-defense or defense of another.[5]

--------

[5] Because the Commonwealth proceeded on the theory that the defendant aided and abetted Vasquez, he would be entitled to a self-defense instruction if the jury could have found that

12

If the Commonwealth fails to disprove self-defense beyond a reasonable doubt, a defendant could be found guilty of voluntary manslaughter if the Commonwealth proves beyond a reasonable doubt that a defendant used excessive force.  See Commonwealth v. Curtis, 417 Mass. 619, 631 (1994).  See also Commonwealth v. Anestal, 463 Mass. 655, 674 (2012) ("To receive an instruction on the excessive use of force in self-defense, the defendant must be entitled to act in self-defense, but used more force than was reasonably necessary in all the circumstances of the case" [quotation and citation omitted]).  "The proper standard for determining whether a defendant's particular actions were justifiably undertaken in self-defense depends on the level of force he used on his victim and the circumstances that prompted those actions."  Commonwealth v. Walker, 443 Mass. 213, 216 (2005), quoting Commonwealth v. Pike, 428 Mass. 393, 395 (1998).

The defendant argues that the jury could have found that the force used by shooting a firearm was excessive and a physical assault by the defendant and Vasquez "would have been a more adequate response to neutralize the threat presented by [the victim's] attempt to draw a firearm."  We are not persuaded and conclude that the trial judge committed no error when he

_____

Vasquez was entitled to act in self-defense or defense of another.  See Commonwealth v. Pasteur, 66 Mass. App. Ct. 812, 819 (2006).  The judge gave a self-defense instruction.

13

denied the defendant's request for the instruction.  As the

judge explained:

> "I think it's either self-defense or not because if, in fact, it's believed that [the victim] pulled the gun first, then there is no excessive force responding to that.  And if it's believed that he didn't pull the gun first, it couldn't just be found to be excessive force.  It's the killing."

We agree.  As relevant to the analysis of whether an

instruction on excessive force in self-defense was required, the

sole issue before the jury was when the victim drew his weapon.

If the jury believed that the victim drew the gun before Vasquez

shot him, then the jury could find that Vasquez's use of the gun

to shoot first would have been justified and not seen as

excessive force.  Commonwealth v. Egerton, 396 Mass. 499, 504

(1986) ("a judge need not charge the jury on a hypothesis

unsupported by the evidence").  Resolving all reasonable

inferences in the defendant's favor, the evidence here did not warrant an instruction on voluntary manslaughter.

Orders entered July 9, 2021,
  and August 18, 2023,
  denying motion and renewed
  motion for new trial
  reversed.

Judgment vacated.

Verdict set aside.

By the Court (Massing,
  Hershfang & Tan, JJ.[6]),

Clerk

Entered:  March 31, 2025.

---

[6] The panelists are listed in order of seniority.

15